CENTRAL LIFE ASSURANCE SOCIETY v. STATE ex rel. FRITTZ, County Atty.

No. 30928. Nov. 17, 1942.

*131 P. 2d 110.*

Duff & Manatt, of Tulsa, for plaintiff in error.

George M. Frittz, County Atty. of Texas County, for defendant in error.

GIBSON, J. This action was instituted in the district court of Texas county by the state, on relation of the county attorney, against Central Life Assurance Society, a corporation, pursuant to article 1, ch. 46, S. L. 1937 (18 O. S. 1941 §§ 86-86l), to collect the statutory penalty for overholding real estate, which statute is said to be an enactment vitalizing section 2, art. 22, of the Constitution, prohibiting corporations in certain cases from holding title to land in this state.

The defendant corporation acquired such title as it now holds to the lands in question by a receiver's deed executed and delivered pursuant to order and decree of the United States District Court for the Northern District of Illinois, or through ancillary proceedings conducted in the proper jurisdiction, in an action pending in said court involving the assets of the insolvent Illinois Life Insurance Company, a corporation. The deed was executed in furtherance of a reinsurance contract entered into between the present defendant and said receiver whereby said defendant undertook to reinsure all the policyholders of the insolvent company and to receive the assets of the latter to be administered under supervision of the court for the exclusive benefit of the policyholders of the insolvent corporation.

The reinsurance contract, the receiver's deed, and the decree of the United States District Court are pleaded and set out in the answer. Demurrer to the answer was sustained, and judgment on the pleadings for plaintiff followed, and defendant appeals.

Defendant says the title so acquired by it was not an illegal acquisition, nor

the retention thereof an unlawful overholding of real estate within the contemplation of the constitutional provision and the statutory enactment aforesaid.

18 O. S. 1941 § 86, supra, provides that in certain instances no corporation shall take title to, hold or own any real estate in the state, except real estate acquired upon foreclosure of mortgages thereon or in the collection of debts due said corporation.

Section 86a provides as follows:

"Every corporation taking title to, buying or acquiring any real estate in the State of Oklahoma upon the foreclosure of a mortgage or mortgages thereon, or in the collection of a debt or debts due to said corporation, shall sell and dispose of said real estate within seven (7) years from the date of the acquisition of said real estate, unless said real estate is located in incorporated cities and towns and additions thereto, or unless said real estate is necessary and proper for .the transaction of the business for which said corporation is licensed or chartered."

And provision 86b contains the following provision:

". . . provided, further, that the acquisition by a corporation of real estate of any insolvent company or corporation, pursuant to the terms of any agreement whereby such acquiring corporation assumes in whole or in part obligations of the insolvent company or corporation to the extent or in excess of the value of such real estate, shall be deemed to be acquisition of real estate in the collection of a debt due the acquiring corporation."

Section 86d provides for the collection of the penalty for overholding. Section 86k reads as follows:

"The provisions of this act shall not apply to trust companies taking only the naked title to real estate in this state as a trustee to be held solely as security for indebtedness pursuant to such trust."

The reinsurance contract fixed upon each policy of the Illinois Life Insurance Company a lien similar to that of a policy loan to the extent of 70 per cent of the net equity of the policy. The net equity represented the mean reserve of the policy and any additions standing to its credit. This lien was made necessary by reason of the impaired condition of the reserves of the Illinois Life Company, and was to be discharged so far as possible from the assets of said company which were to be transferred to defendant and administered by it to that end under order of court. Further adjustments of the amount of the lien were to be made under supervision of the court when the conditions of the assets might warrant. These assets were designated as the Illinois Life fund.

The purpose of the whole arrangement was to utilize the assets of the Illinois Life in the most advantageous manner possible whereby, over a period of adjustment, the policies of that company might be raised to full participating status with those of the defendant company.

The interest acquired by defendant in the lands of the Illinois Life is more clearly revealed by the following portion of paragraph 57 of the contract. It reads as follows:

"As provided in paragraphs 28 and 58 and elsewhere in this contract, the policies assumed shall become unlimitedly (except for any final lien which may be determined) the obligation of the Company on January 1, 1948, or at such sooner time as the lien upon all of the policies shall be completely removed. When the lien is thus completely removed or finally determined, all policies shall become participating with other policies of the Company as provided in paragraph 28 and elsewhere in this contract. In determining when the lien upon all policies shall have been completely removed, the assets may be appraised and the contingency fund need not be regarded as a liability. At such time and after approval thereof by the Court, no contrary order having been previously entered by the Court in any proceeding contemplated by this contract, the Illinois Life Fund shall then cease to exist and the assets therein shall be considered as other assets of the Company. The provisions of this con-

tract thereafter applicable shall continue, but after such date the trust shall cease and the express supervision of the Court shall terminate."

In other words, the assets remaining were to become the property of the defendant on January 1, 1948, or prior to that date in event the lien on the policies was completely discharged.

Defendant alleged in its answer that the lien on the policies had not been satisfied, and that it had not claimed the remaining assets as its own and could not do so prior to January 1, 1948; that it had no beneficial interest in the lands, but held the same for the exclusive benefit of said policyholders, subject to the jurisdiction of the United States Court.

The contract and the answer clearly reveal that the land in question was not owned by defendant within the meaning of the statute. It had not yet acquired the beneficial title; it had not assumed the policy obligations of the Illinois Life in consideration of the assets of that company. Those obligations were assumed only when and to the extent that the participating value of the policies became increased through the process of converting the assets into cash and the application thereof to decreasing the lien. The land may yet be sold under the supervision of the court and converted into cash and applied to that purpose.

The statute under consideration does not purport to apply to titles such as that held by defendant, a bare legal title invested by order of court covering property held in custodia legis.

In reply to plaintiff's assertion that the defendant cannot legally so hold land in this state, we can only say that we are not called upon to determine that question here. The validity of the title it purports to hold cannot be questioned in this action. The penalty is sought to be applied to that title, whatever it may be. If defendant has no title at all, obviously the present action must, for that reason, fail.

We cannot agree with plaintiff that the whole transaction was one whereby the defendant assumed the obligations of an insolvent company in consideration of its real estate, and therefore an acquisition of real estate in the collection of a debt within the meaning of section 86b, supra. The defendant has not as yet received the beneficial title to the real estate, and may never acquire it. It holds title now under order of court for the benefit of the policyholders of the Illinois Life Insurance Company, and not for the benefit of itself or for the benefit of the insolvent corporation. See Wilber State Bank v. State, 183 Okla. 565, 83 P. 2d 805.

In Morthland v. Lincoln National Life Ins. Co., 216 Ind. 689, 25 N. E. 2d 325, the Supreme Court of Indiana had under consideration an almost identical situation. It was there held that the reinsuring company operating under a similar contract and deed pursuant to order of court acquired only the bare legal title to the assets of the insolvent company. That case fairly supports our conclusion here.

Although something has been said concerning the constitutionality of the statute, the parties do not question its validity from that standpoint. We therefore make no expression on the matter.

The judgment is reversed and the cause remanded, with directions to enter judgment for defendant.

WELCH, C. J., CORN, V. C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.